IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANIEL WALTER KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-0609-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff filed his application for SSI benefits in October 15, 2010, alleging an onset date of August 4, 2010. During the hearing he amended his onset date to August 21 to coincide with the denial of his previous application for benefits. R. at 544.

Plaintiff was born in November 1957, has a high school education, and last worked sometime before 2000. During his testimony he described his work limitations as an inability to climb ladders or work at heights and difficulty concentrating. R. at 548-49. He also described being depressed and "overwhelmed" and a desire to not be around people. R. at 552-54.

Plaintiff has received treatment from Pathways Behavioral Health Services ("Pathways") since February 2009. He has also received treatment at the Golden Valley Clinic since at least August 2010. He has provided an extremely detailed account of this treatment history, but for the most part his legal arguments focus on his

mental impairments (as opposed to his physical impairments) and largely do not challenge the ALJ's findings.  Therefore, the Court will provide (1) a summary of (or highlights from) Plaintiff's treatment history and (2) more detail with respect to those matters relevant to his legal arguments.

The treatment notes from Pathways reflect a diagnosis of schizoaffective disorder by history – so the diagnosis was based on Plaintiff's report and not on an independent assessment conducted at Pathways.  The Records also reflect that Pathways ruled out the existence of a mood disorder.  R. at 21.  Most of the records from Pathways reflect meetings of a Community Support Specialist; there are few assessments of Plaintiff's medical or mental condition.  There are some records from visits for medication management; as of October 2010 these records reflect Plaintiff was taking Celexa, Trazadone, Seroquel, Depakote, and Prazosin.  Plaintiff consistently reported continued problems with sleeping (including nightmares) but his medication was largely unchanged and he was generally described as doing well.  R. at 149, 151, 236.

Plaintiff was referred to a psychologist at Pathways (Dr. Ashley Parks) for an assessment, which was conducted in January 2011.  Among the materials Dr. Parks reviewed were Plaintiff's medical records.  She opined that "[b]ased on his vocabulary, grammar, and general fund of knowledge," Plaintiff appeared "to be functioning in the average range of intellectual ability."  He showed no language deficits and "demonstrated adequate abstract thought processing."  He did, however, demonstrate difficulty with tests designed to evaluate attention and concentration.  She diagnosed him with bipolar disorder and assessed his GAF at 45-50.  Dr. Parks also wrote that Plaintiff "would struggle with interacting socially and adapting to changes in his environment.  [He] is capable of understanding and remembering complex instructions.  [He] would have difficulty sustaining attention and concentration for longer periods of time (i.e. 8 hour work day)."  R. at 202-06.

On February 4, 2011, Plaintiff saw a neurologist at Golden Valley.  Plaintiff complained of headaches and dizzy spells (which the neurologist described as "lightheadedness"), the latter occurring when he arose quickly from a sitting position.  The neurologist reviewed a recent MRI and indicated it was unremarkable.  He also

replaced the prescription for Prazosin with one for Lisinopril and advised Plaintiff to return in three months. R. at 196-98.

In April 2011, Plaintiff indicated he was sleeping well but felt "down most of the time with brief improvements in mood." His dosage of Celexa was increased. R. at 232. He went back to the neurologist in May and reported that he was doing better: his dizziness had diminished. The neurologist opined that the symptoms were "non-neurological," ruled out vertigo, and suggested Plaintiff might be suffering from hypotension due to his medication. He advised Plaintiff to take the matter up with his primary care physician or psychiatrist. R. at 223. At a visit to Pathways later that month, Plaintiff reported the neurologist's statement regarding hypotension, and his dosage of Seroquel and Depakote were eliminated and replaced with Risperdal. R. at 230. In July, Plaintiff reported that his mood was good and he was sleeping well; nonetheless, he was prescribed Klonopin (apparently as a replacement for Celexa, which was not prescribed on this visit). R. at 301.

In August 2011, Pathways performed an annual evaluation. It indicates that Plaintiff complained of depression, PTSD, isolation, hallucinations (seeing squiggly lines and shadows and hearing voices), anxiety, anger, suicidal thoughts, and limited social engagement, support, and ability to cope. Plaintiff reported that he could not work, and identified problem areas including "self-esteem, anxiety, attention span, stress management, anger control, communication skills, . . . being uncomfortable in public places, and anxiety." R. at 312-14. The report states Plaintiff "struggled for the past 10 years with all areas of his life, especially since he is no longer able to work and after spending time locked up." However, the report does not explain *why* he cannot work: it parrots Plaintiff's personal medical assessment and accepts his claimed inability to work. From there, it assesses his GAF at 44. R. at 312-14

The following month, Plaintiff reported that he was "doing well" and his mood was "much better – less irritable" although he was more fatigued. His medications were not changed. R. at 322. In October 2011, Plaintiff reported that his "psychiatric medications are working well" although he had "some problems with frequent awakening during the night." Trazadone was discontinued and a trial of Remeron was provided to address Plaintiff's insomnia. R. at 329 In November 2011, Plaintiff reported

3

experiencing more nightmares and that his "mood [was] down at times due to stressors," but he was not having thoughts of suicide or bouts of mania. His dosage of Depakote was increased and his dosage of Celexa was decreased. R. at 338. In December, it was discovered the pharmacy made an error and failed to increase the Depakote. It was also discovered that Plaintiff had continued using Trazadone even though it had been discontinued and had not been taking the Remeron. Nonetheless, Plaintiff reported he was "doing ok, mood has been stable, no recent depression or SI or mania, no recent psychosis, anger under control, still wakes up often." R. at 347. Plaintiff's remaining medical records are similarly benign.

The ALJ issued his decision on April 5, 2012, and found Plaintiff retained the residual functional capacity ("RFC") to perform medium work in that he could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently. Plaintiff could stand or walk a total of six hours per day and could sit for at least six hours per day. However, he could not perform work that required climbing ladders, ropes, or scaffolding or exposure to workplace hazards (such as unprotected heights and dangerous moving machinery). The ALJ also found Plaintiff was limited to "simple, unskilled work involving routine, repetitive tasks within a low-stress environment" and could not work in a position requiring him to respond to customer service demands or be part of a production team. Plaintiff was limited to simple, work-related decisions and could tolerate only occasional interaction with supervisors and co-workers, no contact with customers, infrequent changes in the workplace, and might require occasional redirection to work tasks. R. at 19-20.

In making these findings the ALJ discussed Plaintiff's medical records, Dr. Parks' assessment, and Plaintiff's daily activities. With respect to Dr. Parks' assessment, the ALJ discussed her summary of Plaintiff's medical records wherein she indicated the diagnosis of schizoaffective disorder was by history (and was thus not an actual diagnosis) and that a mood disorder had been ruled out. He also mentioned Dr. Parks' assessment of Plaintiff's reports of hallucinations, wherein Dr. Parks indicated "it was 'unclear' whether the information provided was reliable and valid." R. at 21. The ALJ also discussed Plaintiff's daily activities and concluded that Plaintiff was able to manage his personal care, prepare simple meals, clean, wash laundry, complete household

4

repairs, mow the yard, care for household pets, shop for groceries, spend time with his family, and care for his grandchildren on an extended basis. The ALJ also found Plaintiff could engage in activities requiring him to maintain concentration, such as "watch television, play on the computer, play dice and cards, and listen to music." R. at 23-24.[1]

The RFC was incorporated in a question posed to a vocational expert ("VE"), R. at 558-60. Based on the VE's testimony the ALJ found Plaintiff could perform work as a kitchen helper, order filler, assembler, and marker. R. at 27.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

---

[1]The ALJ also discounted the August 6, 2010, Medical Source Statement provided by Nurse Elaine Boyd because it was inconsistent with contemporaneous treatment notes (including her own), provided no narrative explanation, and did not refer to supporting medical records or information. R. at 24-25. Plaintiff does not challenge this aspect of the decision, so there is no need to discuss it further.

### A.

Plaintiff's contends the ALJ erroneously ignored Dr. Parks' assessment that Plaintiff's GAF was 45-50 by incorrectly stating she said it was "unclear" whether the information was valid and reliable. This mischaracterizes what the ALJ wrote. The ALJ correctly noted Dr. Parks indicated the information regarding auditory and visual hallucinations might not be valid and reliable. The ALJ did not attach this description to the GAF score, and he actually discussed the GAF score in some detail. R. at 21-22.

Within this argument, Plaintiff also seems to suggest the ALJ was required to include greater limitations in the RFC based simply on the GAF score Dr. Parks assigned. This is incorrect. The ALJ has the discretion to "afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010); see also Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010); Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666 (8th Cir. 2003). The ALJ discussed the GAF assigned by Dr. Parks and explained why the number range, standing alone, did not outweigh the rest of the evidence. R. at 21-22. The ALJ's decision to not be bound by the GAF is supported by substantial evidence in the Record as a whole.

### B.

Plaintiff next faults the ALJ for finding Plaintiff's daily activities were inconsistent with his claimed disability. Plaintiff's argument is flawed for two reasons. First and foremost, Plaintiff originally alleged he was disabled due to a combination of physical and mental/emotional limitations. Plaintiff has not challenged the physical aspects of the RFC, so there has not been any discussion of those issues in this Order. While it is true that some of the daily activities the ALJ mentioned relate more aptly to physical abilities (e.g., Plaintiff's ability to mow his yard), this discussion by the ALJ was appropriate given the nature of the claims Plaintiff originally presented. The ALJ did not suggest Plaintiff's ability to mow his yard impacted the RFC insofar as it addressed Plaintiff's mentally-based limitations.

Second, there are aspects of Plaintiff's daily activities that appropriately bear on his ability to concentrate and focus. The ALJ did not rely solely on these activities, but instead noted those activities considered in concert with other portions of the Record demonstrated Plaintiff's abilities. The Court discerns no error.

### C.

Plaintiff's final argument faults the hypothetical question posed to the VE. He contends the hypothetical relied upon was defective because it did not mention his GAF score and did not include any limits on his ability to concentrate or stay on task.

The hypothetical question did not need to mention Plaintiff's GAF score: a GAF score may reflect a person's limitations, but it is not itself a limitation on a person's ability to work. The ALJ appropriately incorporated the limitations that gave rise to the GAF score. Cf. Gragg v. Astrue, 615 F.3d 932, 940-41 (8th Cir. 2010). Plaintiff's characterization of the hypothetical as omitting parts of the RFC related to concentration and persistence is inaccurate. R. at 559.

### III. CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 16, 2014　　　　　　　　　　UNITED STATES DISTRICT COURT